**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CATHLEEN ZILNER,** | ) | **CASE NO.1:21CV1912** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| | ) | |
| **NEURONETICS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | **OPINION AND ORDER** |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant Neuronetics, Inc.'s Motion for Summary
Judgment.  (ECF # 16).  For the following reasons, the Court denies Defendant's Motion.

In her Amended Complaint, Plaintiff Cathleen Zilner, a forty-nine year old woman,  was
hired as a Business Development Manager ("BDM") by Defendant Neuronetics, Inc. in 2018.
Her primary responsibility was finding new business and sales for Defendant's Neurostar, a non-
invasive therapeutic device for treating depression, sold primarily to psychiatrists and psychiatric
clinics.

According to Plaintiff, Defendant set sales goals for Plaintiff each year.  In 2018, she met
her sales goal and was recognized by Defendant as Great Lakes Region MVP for her sales work
in 2019.  In 2020, Plaintiff exceeded her sales quota.  However, in January 2021 Plaintiff was
terminated for allegedly poor performance.  Plaintiff contends the reason for her termination was
pretext for age, gender and gender plus discrimination.  Plaintiff's Amended Complaint asserts

these claims under both federal and Ohio law.

**Defendant's Motion for Summary Judgment**

According to Defendant, Plaintiff was hired in 2018 as a BDM to sell both equipment and services.  Plaintiff was terminated along with four other BDMs due to a larger company reorganization and not due to any discriminatory reason.   In late 2020, Defendant brought in new management due to the company's distressed financial condition.  This new leadership included a new Vice-President of Sales, Sara Grubbs.  Grubbs performed an assessment of personnel that included the BDMs.  In her assessment, Grubbs looked at the BDM's "2019 sales performance, year-to-date 2020 quota attainment, the strength and diversity of their future sales prospects, their manager's individual assessment, and their perceived ability to align with and execute on the company's changed sales strategy."  (Defendant's MSJ, pg. 1).

After her assessment, Grubbs selected Plaintiff for termination due to Plaintiff's achieving only sixty-three percent of her 2019 sales goals (2019 was Plaintiff's first full year with Defendant.).  Grubbs further found that in 2020, Plaintiff's direct supervisor gave Plaintiff the lowest  evaluation of any BDM in the nation.   Grubbs also considered that seventy-five percent of Plaintiff's sales were to a single customer, calling into question Plaintiff's long term ability to meet sales quotas.  At the time of the decision to terminate Plaintiff in November of 2020, she had again only met approximately sixty-three percent of her 2020 sales quota.

Defendant further argues that Grubbs had no discriminatory motive when she decided to terminate Plaintiff.  Grubbs, like Plaintiff,  is a female over the age of forty.  The person hired to replace Plaintiff was also a female over the age of forty.  Neither does Plaintiff allege that any decision maker made any discriminatory statements concerning Plaintiff.  Thus, there is no

evidence of discriminatory motive based on either Plaintiff's gender or age.

Plaintiff disputes Defendant's argument that her termination was the result of poor performance issues.  She cites to the fact that she met her sales quota in 2020, she was replaced by someone substantially younger than her and was terminated, even though a male BDM was not terminated despite having never made his sales quota at any point in his career with Defendant, including 2020.  Also, Plaintiff contends the stated reason for her termination evolved over time, leading to the plausible inference that her alleged performance issues were not the real reason for her termination and supporting the conclusion that it was mere pretext for unlawful discrimination.

## LAW AND ANALYSIS

### Standard of Review

Summary judgment shall be granted only if  "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed.R.Civ.P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).   The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  *See* Fed.R.Civ.P. 56(c)(1)(A), (B).   A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party.  *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

Where a plaintiff is unable to produce direct evidence of discrimination, the court must follow the burden-shifting framework articulated by the Supreme Court of the United States in *McDonnell Douglas Corp. v. Green*.  Under *McDonnell Douglas*, once the plaintiff succeeds in making a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the termination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  If the defendant meets its burden, then the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is a pretext.  *Id*.

4

**ADEA and Ohio Age Discrimination Claims**

Plaintiff's Amended Complaint at Counts I and II alleges she was terminated on the basis of her age in violation of the Age Discrimination in Employment Act ("ADEA") and in violation of Ohio's age discrimination law.  Age discrimination claims brought under Ohio law are "analyzed under the same standards as federal claims brought under the [ADEA]."  *Blizzard v. Marion Tech. Coll.,* 698 F.3d 275, 283 (6th Cir. 2012) quoting *Wharton v. Gorman–Rupp Co.,* 309 Fed.Appx. 990, 995 (6th Cir.2009).  The burden of persuasion is on the plaintiff to show that "age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009).

The ADEA prohibits an employer from discharging an individual because of that individual's age. 29 U.S.C. § 623(a)(1).  Similarly, Ohio Revised Code Section 4112.052 reads: (A) Subject to division (B) of this section, and except as provided in division (D)(2) of section 4112.14 of the Revised Code, a person alleging an unlawful discriminatory practice relating to employment in violation of section 4112.02 of the Revised Code may bring a civil action in a court of competent jurisdiction.   Section 4112.14 of the Ohio Revised Code provides that no employer shall "discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job."

Plaintiff may prove a violation by either direct or circumstantial evidence. *Blizzard* at 283.  Direct evidence of employment discrimination is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Alberty v. Columbus Twp.*, 730 F.App'x. 352, 356 (6th Cir. 2018).  Circumstantial evidence is "proof that does not on its face establish discriminatory animus, but

5

does allow a fact finder to draw a reasonable inference that discrimination occurred." *Id*. at 358, quoting *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009).

Plaintiff has not proffered any direct evidence of unlawful employment discrimination. When a plaintiff presents only circumstantial evidence, federal courts considering Title VII, ADEA and Ohio state-law employment discrimination claims apply the same *McDonnell Douglas/Burdine* evidentiary framework.  *Imwalle v. Reliance Med. Prod., Inc.,* 515 F.3d 531, 544 (6th Cir. 2008) citing *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir.1987).  As a result, Plaintiff has the initial burden of establishing a prima facie claim for age discrimination.   "To establish a prima facie case of age discrimination, a plaintiff must show: '(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination.'"  *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

"An allegation that the plaintiff was replaced by a younger individual supports an inference of discrimination only if the difference in age is significant."  *Blizzard,* 698 F.3d at 283.  The parties do not dispute that Plaintiff was over forty years of age at the time of her termination, thus under the ADEA and Ohio law, she was a member of a protected class.  Nor is there any dispute that Plaintiff suffered an adverse employment action as she was terminated from her employment with Defendant.  Lastly, there is no dispute Plaintiff was qualified for her BDM position.   Instead, the parties dispute that Plaintiff was replaced by someone substantially younger.

According to Defendant, Plaintiff was replaced by a female, Stacy Fleury,  over the age of forty, therefore, she was not replaced by someone outside her protected class.  While Plaintiff

concedes her replacement was a female over forty, Plaintiff was forty-nine at the time of her termination, while Fleury was forty at the time she was hired.

Although Plaintiff's replacement was in the protected class, the Supreme Court has held that the ADEA does not require that the replacement be outside the protected class but merely that the replacement be substantially younger than the plaintiff.   See *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 313, 116 S. Ct. 1307, 1310, 134 L. Ed. 2d 433 (1996).   ("Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.").   The Sixth Circuit has held that an age difference of more than six years can be substantial.   See *Grosjean v. First Energy Corp.,* 349 F.3d 332, 340 (6th Cir. 2003).   ("[W]e hold that, in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant.   This rule will assist district courts in making a firm determination, yet does not encroach on our precedent holding that eight years can be a significant age difference.").   More recently, the Sixth Circuit reiterated its holding in *Grosjean* in *Blizzard.*  The Sixth Circuit in *Blizzard* wrote "*Grosjean* essentially created a zone of discretion in age-discrimination cases involving replacement by a person who is between six and ten years younger than the plaintiff.   Here, the district court concluded that, although the six-and-a-half year age difference between Blizzard and Teeter 'is perhaps not the best evidence to create an inference of age discrimination,' it was nonetheless sufficient to create an issue of material fact at the summary judgment stage." *Blizzard*, 698 F.3d at 284.

7

While *Blizzard* dealt with an age difference at the low end of the *Grosjean* zone of discretion range, the facts before the Court present an age difference at the upper end of the zone of discretion.  When considered in light of the *Grosjean* pronouncement that eight years can be significant and the Sixth Circuit's holding in *Blizzard* that a six and a half years age difference was sufficient to create an issue of fact and defeat summary judgment,  the Court finds the nine year age difference between Plaintiff and her subsequent replacement satisfies Plaintiff's prima facie burden to show she was replaced by someone substantially younger.

**Legitimate Non-Discriminatory Reason for Her Termination**

Under *McDonnell Douglas*, the burden of production now shifts to Defendant to articulate a nondiscriminatory reason for its adverse employment action against Plaintiff. *Alberty,* 730 F. App'x. at 358.  An employer is "entitled to judgment as a matter of law if the record conclusively reveals some other, nondiscriminatory reason, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000).  Generally, poor work performance is a legitimate and nondiscriminatory reason for discharge.  *Heck v. Bd. of Trustees*, 12 F.Supp.2d 728, 740 (S.D. Ohio 1998), *accord Danielson v. Lorain*, 938 F.2d 681, 684 (6th Cir. 1991) (stating that workers who poorly perform their jobs are not insulated from dismissal simply because they are members of the protected age group).

According to Defendant, Plaintiff's termination needs to be placed in the context of a wider reorganization that occurred in 2020 along with the business challenges faced by Defendant due to Covid.  Plaintiff was recruited by Regional Business Development Manager

8

Tony Snow, whom Plaintiff had previously worked with at another company.  Plaintiff initially reported to Snow but in 2020 Stephen Davis became her supervisor.  In July 2020, Defendant hired a new CEO, Keith Sullivan, who Davis testified wanted to bring in his own people. (Davis depo. pgs. 91-92).  In 2020, Defendant laid off nearly half its entire organization due to poor sales.  Plaintiff was not part of this reduction in force.  But as a result, there was a significant restructuring of personnel, including Davis taking over as Plaintiff's direct supervisor.  Grubbs was hired by Sullivan in October 2020 as Vice President of Sales and was tasked with evaluating and expanding Defendant's entire sales force to meet the needs of Defendant going into 2021.  As part of her evaluation, Grubbs met with managers to discuss their evaluations of the BDMs and compared BDM sales performances in 2019 and 2020 against their sales quotas, along with their sales funnels ( a tool used to track leads as they progress from prospects to customers.).

Defendant cites to the deposition of Grubbs, who testified that she made the decision to terminate Plaintiff based on Plaintiff's performance rating and her sales performance.

> Q The determining factor was that you didn't think she was selling enough; right?
>
> A I think the determining factor -- again, I go back to my three things: Her manager ranked her the lowest in the company, she had terrible performance in 2019, and really only had five sales up until the last two days of December. So to me, not a great performer.

(Grubbs depo. pg. 124).

Grubbs cited Plaintiff's low rating by her direct supervisor, Stephen Davis, and her failures to make quota in 2019 and 2020 as determining factors.  Nor did she believe Plaintiff was a consistent high sales  performer. (*Id.* pgs. 122-125).  Moreover, Grubbs considered that

Plaintiff's sales were largely to a single customer, creating concern she was not working her full territory.  (*Id*. pgs.  80-82).  At this stage of the proceedings, a Defendant "need only introduce sufficient admissible evidence that raises a genuine issue of fact that its proffered reason for the adverse action was based on a non-discriminatory reason."  *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 814–15 (6th Cir. 2011).  Based on the above evidence, the Court finds Defendant has met its burden to show a legitimate non-discriminatory reason for Plaintiff's termination.

**Pretext**

Once Plaintiff has established a prima facie case of age discrimination and Defendant has countered with a legitimate, nondiscriminatory reason for terminating Plaintiff, the burden shifts back to Plaintiff to establish that Defendant's stated reason for discharge is pretextual.  *Blizzard*, 698 F.3d at 285.  At the pretext stage, the plaintiff must produce sufficient evidence from which a jury could reasonably reject the defendant's stated reasons for termination. *Id.*  To establish pretext, Plaintiff must show that:  "(1) the proffered reasons had no basis in fact, (2) the proffered reasons did not actually motivate discharge, or (3) they were insufficient to motivate discharge." *Id.*, quoting *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (Emphasis removed).   Pretext "is a commonsense inquiry: did the employer [take action against] the employee for the stated reasons or not?"  *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 at n.4 (6th Cir. 2009).  Courts may not second-guess the business judgment of an employer but must instead determine "whether the employer gave an honest explanation of its behavior." *Hedrick v. W. Res. Care Sys.,* 355 F.3d 444, 462 (6th Cir. 2004).  "Time and again we have emphasized that [o]ur role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments."  *Corell v. CSX Transp., Inc*., 378 F.App'x 496,

505 (6th Cir. 2010) quoting *Risch v. Royal Oak Police Dept*., 581 F.3d 383, 399 (6th Cir. 2009).

Plaintiff argues that Defendant's stated reason for her termination -i.e. her performance issues, were false or did not actually motivate her termination as her performance exceeded the performances of her comparators who were outside the protected class and were retained/hired.

Plaintiff challenges the accuracy of Defendant's characterization of her performance while employed as evidence that the stated reason for her termination -i.e. her poor performance- was not true.  According to Plaintiff, Grubbs admitted on deposition she did not review Plaintiff's performance evaluations nor did she review Plaintiff's sales funnel documents prior to making the determination to terminate Plaintiff's employment.  According to Plaintiff, the decision to terminate her appears to have been based largely on a subjective opinion of Plaintiff's performance, including the evaluation of her immediate supervisor, Stephen Davis, rather than based on any objective criteria.  Under applicable caselaw such a subjective basis for termination militates against summary judgment.  See *Valentine v. Remke Markets, Inc.* No. 1-10CV922, 2012 WL 4050004 at *9 (S.D. Ohio, Sept., 13, 2012).  ("Obviously the more subjective the qualification and the manner in which it is measured, the more difficult it will be for the defendant to meet the burden imposed by the court in *Burdine*.").  Quoting *Grano v. Dep't. of Dev.,* 699 F.2d 836, 837 (6th Cir.1983).  Plaintiff argues the letter grade given BDMs by their direct supervisors were entirely subjective and Grubbs relied in part on the same without reviewing the performance evaluations and without seeking substantive input from the direct supervisors.  (Grubbs depo. pg. 22).

Plaintiff contends she can demonstrate that by any objective criteria her performance exceeded that of employees outside the protected class who were not terminated and that she was

not a poor performer.  Plaintiff first points the Court to the testimony of Jon Goodman, Defendant's former Vice President of Sales who testified Plaintiff was one of his best salespeople. (Goodman depo. pg 13).  Goodman further testified he could see no reason for her termination based on her performance and he would not have recommended such a decision.  (*Id* at 31).

Likewise, Stephen Davis, former Area Sales Director for Defendant, testified that he did not believe Plaintiff was terminated based on her performance.  (Davis depo. pg. 91.).  Plaintiff then presents evidence that she met her sales quota in 2018, and in 2019 was the top performing BDM in her region, was selected MVP of the Great Lakes Region and was even appointed to train other team members.   (ECF # 18-4), (ECF # 18-11) and (ECF # 18-12) see also Zilner dec. ¶9.

Part of Plaintiff's alleged performance failures that led to her termination was her alleged poor sales funnel.  Yet again, both Goodman and Davis both testified that she had a strong sales funnel.  (Goodman depo pg. 36) ("If I  remember  correctly, Cathy always had a very strong, robust funnel.") See also Davis deposition page 55.  ("  From my overall experience, I would say that I recall the funnel was good with the one -- as I had mentioned in that previous report -- the one main concern was that there was too high of a reliance on one particular existing customer to continue to expand to be able to achieve her goal sustainably.").

Finally, Plaintiff alleges Defendant falsely represented that she did not meet her quota in 2020 when in fact she did make quota that year.  All the above raises issues of fact that Plaintiff contends requires allowing a jury the opportunity to determine whether age discrimination was the reason for Plaintiff's termination.

12

Defendant argues there is no prima facie showing of age discrimination because the age difference between Plaintiff and her replacement was less than ten years, which is not substantial.  Moreover, both decision makers who made the decision to terminate Plaintiff were women over forty years of age.

Defendant further contends that Plaintiff has also failed to show her termination was not due to performance issues.  Davis testified that Plaintiff was terminated for the same reason he was terminated months after Plaintiff; because new management "wanted to bring in their team." (Davis depo. pg. 91-92).  It is undisputed that Defendant brought in new management in 2020 and that Zilner was not the only person terminated by this new management.  Defendant argues that its decision to terminate Plaintiff was consistent throughout that it was strictly a performance based decision and not based on any discriminatory motive.  As a purely business decision, Defendant contends the honest belief rule applies and the Court should not second guess this decision by acting as a "super personnel department."  "When an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless."  *Chen v. Dow Chem. Co.,* 580 F.3d 394, 401 (6th Cir. 2009)

Upon consideration of the arguments and evidence, the Court finds there are genuine issues of fact surrounding Plaintiff's termination that a jury could find supports age discrimination.  The Court has already determined that a nine year age difference satisfies Plaintiff's prima facie burden to show she was replaced by someone substantially younger. While Defendant has produced evidence that its decision to terminate Plaintiff was for a legitimate reason, Plaintiff has pointed the Court to sufficient evidence that calls in to question

13

Defendant's characterization of her performance, particularly considering the accolades she was given in 2019, her performance relative to other BDMs in her region and the dispute that she ultimately met her sales quota in 2020.  While the honest belief rule requires that the employee allege more than a dispute over the facts upon which discharge was based and provide evidence that shows that the employer did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action; see *Blizzard,* 698 F.3d at 286, the above evidence would allow  a jury to find that the stated reasons for termination were not based on an honest belief, even if mistaken.

Therefore, the Court denies Defendant's Motion for Summary Judgment on Plaintiff's ADEA and Ohio Age Discrimination claims.

**Gender Discrimination Under Title VII and Ohio Law**

Plaintiff asserts a claim for unlawful discrimination based on her gender under Title VII and Ohio law.  Title VII's anti-discrimination provision makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).   To meet her Title VII prima facie burden plaintiff must show: "(1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was treated differently from similarly situated members of the unprotected class."  *Knox v. Neaton Auto Prod. Mfg., Inc.,* 375 F.3d 451, 456–57 (6th Cir. 2004).  The prima facie case requirements are essentially the same under the Ohio Revised Code § 4112.02.  (*Id* at 457).

Once again, the parties do not dispute that Plaintiff was a member of the protected class,

14

that she suffered an adverse employment action and that she was qualified for her job.  However, unlike her Age Discrimination claim, Plaintiff cannot show she was replaced by someone outside her protected class because her replacement, Stacy Fleury, was female.  Instead, Plaintiff argues that she was treated differently than similarly situated males.

Plaintiff points the Court to a fellow BDM, Joe Maher, a male she contends was similarly situated to Plaintiff who was treated more favorable than Plaintiff by Defendant.

According to Plaintiff, Maher and Plaintiff were similarly situated as they both share the same job title and duties, shared overlapping sales territories (Grubbs depo pg 39), and experienced the same evaluation process  with respect to sales funnel and overall sales.  Grubbs evaluated both and made the decision to keep Maher and terminate Grubbs despite Maher's poor performance compared to Plaintiff's.   According to Grubbs, she had originally planned to terminate Maher due to his poor performance but kept him due to his direct supervisor's advocacy on Maher's behalf.  (*Id.* at pg 40).  Grubbs stated that Davis, Plaintiff's supervisor, did not advocate on her behalf.  (*Id.*.).  Davis testified that he did advocate on her behalf yet he was ignored.  (Davis depo. pg 79).   Moreover, Plaintiff ranked higher than Maher in both 2019 and 2020 amongst BDM's.  (ECF # 18-19, 21). Yet Maher was retained, while Plaintiff was terminated.

Defendant disputes Plaintiff's argument that she was similarly situated to Maher in all relevant respects.  According to Defendant, Plaintiff is not similarly situated to Maher as they had different sales territories, different supervisors and were given different ratings by their respective supervisors.   Defendant contends Maher's supervisor's strong advocacy for Maher persuaded Grubbs to remove Maher from the termination list.  In contrast, Davis, Plaintiff's

15

supervisor, claims he advocated for Plaintiff's retention, yet his testimony does not support that his advocacy was for her retention.  Rather, the evidence demonstrates his "advocacy" was only with regards to his suggestion to Grubbs that the reason for Plaintiff's termination should be focused on a shifting of geographical territories as opposed to her poor performance.  (Davis depo. pg. 95).   Moreover, there is no evidence that Plaintiff's termination had any relation to Plaintiff's gender or age.

The Sixth Circuit has held "that to be deemed 'similarly-situated' in the disciplinary context, 'the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). *Mitchell v. Toledo Hosp.,*  964 F.2d 577,  583 (6th Cir. 1992).   "Courts should not assume, however, that the specific factors discussed in *Mitchell* are relevant factors in cases arising under different circumstances, but should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee. The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly-situated;" rather, as this court has held in *Pierce*, the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in "all of the relevant aspects." *Ercegovich*, 154 F.3d at 352.   The Sixth Circuit concluded "we simply require that the plaintiff demonstrate that he or she is similarly-situated to the non-protected employee in all relevant respects. A contrary approach would undermine the remedial purpose of

16

the anti-discrimination statutes." (*Id.* at 353).

In light of the above requirements, the Court finds that Plaintiff has offered sufficient evidence to show she and Maher are similarly situated in all relevant respects so as to satisfy her prima facie burden. Plaintiff and Maher both held the same employment positions with Defendant as both were BDM's. While it is true they had different sales territories, they both had Ohio as a sales territory. They sold the same product and services for Defendant. Grubbs made the ultimate determination on both their continued employment with Defendant. Grubbs used the same criteria in evaluating them, including: sales performance, sales funnels and supervisor evaluations. This evidence is sufficient to meet Plaintiff's prima facie burden.

For the same reasons as those stated by Defendant in opposing Plaintiff's ADEA claims, Defendant has produced sufficient evidence regarding Plaintiff's performance to meet its burden to show a legitimate non-discriminatory reason for Plaintiff's termination.

For the same reasons as stated previously in the Court's ADEA analysis, Plaintiff has submitted sufficient evidence of pretext to defeat Defendant's summary judgment Motion on Plaintiff's Gender Discrimination claims under Title VII and Ohio law. Consequently, the Court denies Defendant's Motion for Summary Judgment on Plaintiff's Gender Discrimination claims.

**Gender Plus claims**

Plaintiff also asserts employment discrimination claims under Title VII and Ohio law for gender plus discrimination. The United States Supreme Court in *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 544, 91 S. Ct. 496, 498, 27 L. Ed. 2d 613 (1971), held that Title VII could support a gender plus claim when that additional plus factor was an unprotected classification such as having pre-school age children. ("The Court of Appeals therefore erred in reading this

section as permitting one hiring policy for women and another for men—each having

pre-school-age children.  The existence of such conflicting family obligations, if demonstrably

more relevant to job performance for a woman than for a man, could arguably be a basis for

distinction under s 703(e) of the Act.").  However, only one circuit has expressly held that Title

VII prohibits sex-plus-age discrimination.  See *Frappied v. Affinity Gaming Black Hawk, LLC.,*

966 F.3d 1038, 1047 (10th Cir. 2020) ("...no circuit court has yet addressed whether Title VII

prohibits sex-plus-age discrimination.").

      Regarding how the Sixth Circuit views gender plus discrimination claims, a district court

wrote:

> The question becomes whether sex plus age—i.e., discrimination based on an
> individual's status as an older woman—is a recognized subcategory under Title
> VII. The Sixth Circuit has suggested it is not. In two unpublished decisions that
> address this issue, both of which were decided after the Supreme Court
> recognized sex-plus-marriage discrimination in *Phillips*, the Sixth Circuit
> expressly pointed out that a sex-plus-age claim has not been recognized. See
> *Schatzman v. Cty. of Clermont,* 234 F.3d 1269, *9 (6th Cir.2000) (noting that
> "neither the Supreme Court, nor this Circuit, recognize such a [sex-plus-age]
> claim"); *Sherman v. Am. Cyanamid Co.,* 188 F.3d 509, *1 (6th Cir.1999)
> (declining the invitation to recognize a claim for sex-plus-age discrimination, in
> part because the plaintiff could not establish such a claim).1 Although those cases
> do not preclude Plaintiff's sex-plus-age claim, they show that additional analysis
> is warranted.

*Thompson v. City of Columbus*, No. 2:12-CV-01054, 2014 WL 1814069, at *4 (S.D. Ohio May

7, 2014).  District courts within the Sixth Circuit have found Title VII supports a gender plus

claim, as have Ohio courts.  See *Siegel v. Inverness Med. Innovations, Inc.,* No. 1:09-CV-1791,

2009 WL 3756709, at *2 (N.D. Ohio Nov. 6, 2009) (finding gender plus claims are cognizable

under Title VII and Ohio law. ).  "Under a "sex-plus" theory of discrimination, it is

impermissible to treat men characterized by some additional characteristic more or less favorably

than women with the same added characteristic." *Rock  v. T.N.H.D. Partners, LLC,* 833 F. Supp.
2d 802, 819 (M.D. Tenn. 2011).  See also *Mustard v. Timothy J. O'Reilly Co.,* LTD.,
2004-Ohio-425, ¶ 4.  The Equal Employment Opportunity Commission has also recognized the
validity of such claims. See 2 *EEOC Compliance Manual § IIA*, 2009 WL 2966754 (Aug. 6,
2009).

Defendant does not challenge Plaintiff's Gender Plus claim as non-viable under federal
or Ohio law, but relies on its arguments in opposition to Plaintiff's Age and Gender
Discrimination claims.  "Courts generally agree that 'sex plus' discrimination is 'ultimately
premised on sex' and therefore should be analyzed like any sex discrimination claim under Title
VII.  *Gee–Thomas v. Cingular Wireless,* 324 F.Supp.2d 875, 882 (M.D.Tenn.2004).

In this case, Plaintiff's Gender Plus claim is not based on a combination of protected
characteristics enumerated in Title VII; rather, the "plus-" characteristic is age, which is not a
protected class under Title VII.   "Ample precedent holds that Title VII forbids "sex-plus"
discrimination in cases in which the "plus-" characteristic is not itself protected under the
statute."  *Frappied,* 966 F.3d at 1045–46.  ("...the 'plus' does not mean that more than simple
sex discrimination must be alleged; rather, it describes the case where not all members of a
disfavored class are discriminated against." (quotation omitted)); *Back v. Hastings On Hudson
Union Free Sch. Dist.,* 365 F.3d 107, 118 (2d Cir. 2004) ("The term 'sex plus' or 'gender plus' is
simply a heuristic.  It is, in other words, a judicial convenience developed in the context of Title
VII to affirm that plaintiffs can, under certain circumstances, survive summary judgment even
when not all members of a disfavored class are discriminated against."  *Frappied,* 966 F.3d at
1046.  "Like any other sex-plus plaintiff, a sex-plus-age plaintiff must show unfavorable

19

treatment relative to an employee of the opposite sex who also shares the "plus-" characteristic. For the female sex-plus-age plaintiffs in this case, the relevant comparator would be an older man." (*Id* at 1048).

Here, Plaintiff can show that she was treated less favorably than a male comparator who was also over 40 and was not substantially younger than Plaintiff.  As a result, and for the same reasons as those cited by the Court in denying Defendants' Motion for Summary Judgment on Plaintiff's Age and Gender claims, Defendant's Motion for Summary Judgment on Plaintiff's Gender Plus claim fails under federal and Ohio law.

Therefore, for the foregoing reasons, the Court denies Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.


       /s/Christopher A.Boyko
       CHRISTOPHER A. BOYKO
       United States District Judge